May it please the Court, my name is David Boies and I represent the plaintiffs. Mr. Boies, I'm going to ask you to keep your voice up because I have trouble hearing you. And you have a soft voice, so I'm not having trouble hearing you, but I'd hear you better if it were louder. Thank you. My name is David Boies and I represent the plaintiffs, and with the Court's permission, I will reserve five minutes for rebuttal. The first question that the Court has asked is what are the factor or factors that would go into determining which law is most impaired if there is a comparative pertinent analysis. And we think under California law, and of course it is a decision of the California courts, what is at issue here is what would the California courts decide are the most pertinent factors. And we believe that those pertinent factors are identified in California court decisions. They are whether the law is general or specific, whether the law is old or is new, whether the law has been recently reviewed and updated, whether the law is consistent with modern norms or an outlier, whether the law is consistent or inconsistent with the state's other laws and policies, whether the protection of the right of California citizens in the circumstance presented is important or particularly important to California, whether the California citizen voluntarily exposed themselves to the laws of the other jurisdiction, and whether the people who the law was designed to protect can be protected in other ways. We believe that these are the basic issues that the California courts would consider in terms of determining whether under choice of law to apply the California law or the Spanish law. Let me ask you this. I know the issue of certification has come up as to what the California law is. If we were to certify anything here, would it still come back to us to make a determination of the application of the governmental interest test? I don't think it would come back to this court for an issuance of a judgment, but I don't think it would come back to this court for necessarily further proceedings. Well, so it's your position that if we certified in the California law, let's just say the certification, that the law seemed more favorable to your position, but you're saying that the California Supreme Court would also apply the governmental interest test right there and tell us just the concierge win. I think that the California court could. Obviously, it would be up to what this court asks and what the California court does, but I think the California Supreme Court clearly could say that given these circumstances, California choice of law would be to pick the California law. And which California law would that be? Excuse me? What California law would that be? That would be the California law that provides that in order to extinguish the rights of the rightful owner of art, stolen, looted property, there must be actual knowledge and then a six-year period after the actual knowledge. And it's already been decided in this case that there was no actual knowledge on the part of the concierge. Prior to the time. There was no actual knowledge on the part of the concierge or of the TBC? This would be actual knowledge. You're right, Your Honor. We've talked about actual knowledge on the part of TBC before, but this is actual knowledge on behalf of the concierge. Under California law, in order for the concierge's rights to this painting to be extinguished, they would have to have had actual knowledge of the possession of TBC for six years prior to bringing the lawsuit, which of course they did not. Well, you could see that the Spanish law would apply had Casara or Casara had actual knowledge that the painting was in Spain for six years. Is that your point? No, no, no, Your Honor. A California law would apply. In other words, the issue here is whether Spanish law or California law applies. And what I'm saying is that if California law applies, then I think it is clear, in fact I don't think it's disputed, that if California law applies, then the concierge win. Why do they win? What law gives them the right to win? The California law, Your Honor. Which California law? Do you mean the law that title doesn't pass through a thief? Yes. But that's not an issue here. 338C3. Section 338C3. That's a statute of limitations issue. It is. And we've already ruled that the statute of limitations issue, that and here, are statute of limitations issues and are no longer in the case. Excuse me, I'm not sure I understood that, Your Honor. Well, haven't we already ruled that the California interest, as shown by 338C3, and the federal interest under the HER, has already been determined to be a statute of limitations issue rather than a substantive merits issue? I'm not sure that that has been determined, Your Honor. But whether or not it is a merits issue or a statute of limitations issue, the question here is, however you characterize it, is whether or not the prescriptive rights under Spanish law extinguished the concierge's rights to this painting. That's correct. And under Section 3383C of the California Civil Procedure Code, that provides that it does not extinguish those rights. No, that provides that the period in which an action can be brought is extended. It doesn't deal with the merits question about whether the rights to property can be extinguished by a substantive law of another state. And it doesn't deal with any other matters than the extension of the statute of limitations. As I understand it, your claim of California law is that California law is that the rightful owner should be given the possession of their property. Yes, that's true. Period, right? Period. That's the law of conversion, right? That is the law. And yes, you're exactly right on that part, Your Honor. But we also rely on 338C3 because that goes to the strength of the policy of California. But the policy that California has stated is a procedural policy opening up the California courts for claims to be made. 338C3 is in the Code of Civil Procedure. It is not in the Civil Code. It doesn't grant substantive rights to any claimant. It gives the opportunity to make claims to a claimant. I don't think, Your Honor, with respect, that that is the way California would interpret it. One of the reasons that we— Well, that's one of the issues we put to the California court. I agree with that. How to interpret 338C3. Thank you very much. Okay, let me—oh, go ahead, Judge. Yes, among the factors when you're listing the factors we should consider, you didn't raise the factor in McCann that California recognizes that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders, which McCann seemed to think was a key issue in saying that Oklahoma, rather than California, has superior interests. How should we consider that interest in this case? Well, Your Honor, in the McCann opinion, at—I think it's page 536 of the Pacific Reporter version, Pacific Reporter third version of that case, the court, in talking about the Castro case, which was very similar in terms of the facts to what was presented in McCann, said that what was important was that the plaintiff had, quote, voluntarily exposed themselves to the laws of that other jurisdiction. One of the things I think is very important, Your Honor, is that the TBC cites no case, and we're frankly aware of none, in which the California courts have ever applied foreign law to the rights of a California citizen, to limit that California citizen's rights, except where that California citizen has gone to that foreign state and voluntarily exposed themselves to the laws of that state. For example, what was at issue in McCann is whether somebody who had gone—I think it was to Oklahoma—worked in Oklahoma, the alleged wrong took place in Oklahoma, and only then, long afterwards, did the person come to California. What the California court was saying was that the plaintiff had voluntarily exposed themselves to the laws of Oklahoma and were bound by those laws. That, of course, is not what at all happened here. Here, the casseers were citizens of California from the 1980s on. The casseers were citizens of California when TBC acquired the painting. They were citizens of California when TBC acted in a way that the district court held maybe irresponsible. They ignored the red flags that indicated that this had been stolen. They didn't do their diligence. They said irresponsible, but strangely, if I understand it correctly, there's really no dispute that casseer had the burden to show that TBC had a blind eye or had actual knowledge, right? Do you agree to that? And so the district court, for whether agree or not agree, found that you did not meet your burden on that, even though it may have been—but everyone seems to think it may have been irresponsible, but they said you didn't meet the burden. So it's hard for me to sort of, as a just appellate procedure, to upset that finding. And then I guess the district court also found at some point that we sent it back and saying let us know whether they're an incubator and said no. I might have found differently, say, from this standpoint, that it's always concerned me that on the back of the painting, there's Berlin, and these are the Baron and TBC are experienced art people, and why that wouldn't put someone on notice that there's what was happening in Berlin in the time, why that wouldn't be of concern. But can I really upset those findings? Your Honor, I don't think you have to upset those findings, because we're not asking right now to have you find TBC had actual knowledge. The relevance of those findings is it goes to what is, under the California choice of law decision, which law is more comparatively impaired. Well, let me ask you this, then, which sort of goes along with this. In determining whose interests are most impaired, may we as a panel consider whose law is more just or equitable or more consistent with international law? You certainly can consider which is more consistent with international law, which is more consistent with modern norms, which is an outlier. California courts talk about that. How can we do that when the California Supreme Court has told us we can't consider which policy is better? You can't weigh which policy or law would be maybe in some sense better, but what you can do... How are those two statements consistent? I know there are things in California law saying, well, this was old law, and now we have progressive law, and yet we're told that we can't consider the goodness of the policy. But the California Supreme Court has very explicitly said you can consider whether it's old or new, whether it's modern or an outlier. You can consider whether it's consistent with other policies. For example, we pointed out, and this court pointed out in its opinion, that TBC's position is inconsistent with the moral and policy declarations of Spain. Well, they signed a treaty. They signed a treaty, and they have their laws. So the treaty is not the same as the laws. Exactly. It's not the same as the law, Your Honor, but it can be taken into account in determining whether the impairment of that law is as significant as the impairment of California's law. In other words, when you're looking at impairment, you're looking at how significant is this law in the context, in the specific context of the case, the California court keeps saying. And you've got to look at it in the specific context. I mean, for example, taking into account Spain. May I interrupt you for just a second? You seem to say that we cannot talk about foreign law unless the plaintiff voluntarily exposed himself to that law. Did Mr. Reich expose himself to Ohio law? Did what? Did Mr. Reich expose himself to Ohio law? No, he didn't. He was a California citizen who drove in Missouri, and the accident happened in Missouri. It was the plaintiff who had been in, I mean, yeah, the plaintiff had been in Ohio, but not. But the plaintiff, the plaintiff had voluntarily exposed themselves. To where? To a non-California jurisdiction.  Reich had gone to Ohio? But what I'm saying is, Your Honor, California citizens who do not expose themselves to non-California laws have always been protected. I'm now down to where? I'm going to give you time for rebuttals, so just answer the court's question. I think you've answered my question. Let me ask you that. Okay. What would they, if we certified to the California Supreme Court, what would they have to say in order for you to win, number one? What would they have to say about California law that would allow you to win? And then number two, if we don't certify, can you win based on some of the findings that have already happened in this case, and if we weren't willing to upset those findings in the governmental interest? First, with respect to the California Supreme Court, I think they could do one of two things, either one of which I think would enable us to win. One, they could say the factors that need to be considered are the factors that I just identified in my opening remarks, because I think if those are the factors, and we believe they are the factors, then I think applying the undisputed facts of this case to those factors means that we win. Second, the California Supreme Court could say, given the facts that are undisputed from this court's opinion, California law would apply. That is, California choice of law would apply. So I think, and I've seen certifications go both ways, from this court to the California Supreme Court. Sometimes the California Supreme Court simply says these are the factors. Sometimes they, in effect, say this is the result. But you're saying that they could say that California's interest would be more impaired than Spain's, and therefore California law applies? Exactly. Okay, thank you. Exactly. Is there anything in the Supreme Court decision from Justice Kagan that would say that this should be certified? Is there anything you see in that opinion? I don't think there's anything that directs it one way or the other. I do think that what Justice Kagan makes clear is that this needs to come out the same way it would have come out if it had been in a California state court. And private party. Right, and a private party. And I think the implication of that is that this is a purely appropriate case to certify to the California Supreme Court. I think that she doesn't say that, but if you look at some of the other Supreme Court decisions where they do talk about certification, they talk about certification, where it's particularly important that the state law be interpreted correctly. And the Supreme Court emphasizes this has got to be decided the same way it would be if it was in a California state court with a private party. And I think the implication of that is that if you – the best way to achieve that is to certify it. Now, I think, obviously, to be candid, we want you to certify because we're pretty confident of what the California Supreme Court's going to do. But we think that as a matter of jurisprudential policy, this is the kind of case that is appropriate to send to the state Supreme Court. Should I go on to the second question? Sure, since I asked it. With respect to the second question, I think we can win, even if you don't certify it to the California Supreme Court, because I think what is relevant here is, first, the United States Supreme Court ruling that this has to be decided the same way it would be under California law, in a California state Supreme Court with a private party. And the California law, in choice of law decisions, makes clear, we think, that the kind of factors the court would take into account are the kind of factors that elevate California policy when it's a strong policy. And this is clearly a very strong policy of the state. That it tends to disregard foreign law, or even California law, if it's old, hasn't been reviewed and updated recently. We're dealing with a Spanish statute from 1889. We're dealing with a California law that has been in place for a long time, but has been updated and revised and looked at. I mean, for example, in the legislative history in 338C3, although I understand it's in the procedure, in the legislative history, they talk about what they are doing is reaffirming that a thief cannot convey good title. Well, does it matter that basically everything happened in Spain, okay, except they live here? Does it matter that it would be hard for an order someone to find this painting? Do the facts of this case, do they matter in somehow analyzing this? Because you would have to be capable of traveling to museums outside of California. And you would have to, and then if you go to museums, like I go to museums, I don't look at every painting in the entire museum. I have about a two-hour limit, and then I have to go and come back another day because I can't possibly look. But, of course, they could go to the Impressionists. But does it matter that it would be hard for someone that they would have to go to Europe, that they would have to go to all the museums, and that they would have to look for this painting? I think it does matter, Your Honor. And that was one of the things that California talked about in the legislative history that both we and the California Attorney General refer the court to, where the California legislature says it matters a lot because individual owners, rightful owners of property, of stolen art, are not going to be able to canvas all the museums. They're not going to be able to find out where all the art is. And so that's why California said we want to have actual knowledge of the plaintiff. The plaintiff has got to have actual knowledge that it's there before there's an obligation to go and try to get it. Okay, unless my colleagues have additional questions. I have a question. Go ahead. I read Judge Walter's decision a couple of times. What's wrong with it? Well, Your Honor, while we think that we met the actual knowledge standard, we concede that the actual knowledge standard— No, no, no. In choosing Spanish law to apply, Judge Walters went through the analysis of McCann versus Erickson very carefully, and he found that California has jurisdiction in this case by the fortuitous event that the Casares decided to come to live in California and that all the actions that took place, as Judge Callahan said, took place in Spain. So tell me what conduct is in the governmental interest of California to regulate compared to the conduct which is in Spain's interest to regulate. That's the basis of his opinion. What was wrong with John Walters, District Court Judge, opinion? Five things, Your Honor. First, with respect to McCann, Judge Walker ignores the portion of McCann in which the California Supreme Court emphasizes the importance of the fact that the plaintiff had voluntarily exposed themselves to the law. In that case, I think it was Oklahoma. That is not the case here. There's no suggestion that any of the plaintiffs exposed themselves— Mr. Casares going to Spain to make a claim against the government in 1999 was not exposing himself to Spanish law. No, because what the court is talking about there is exposing yourself at the time of the wrong. In other words— Next question. Next point. Next point. What the court is talking about in McCann is the—and this is at page 536 of the Pacific Third report. The court is talking about exposing at the time of the wrong. I've got that point. What are the other four points? Second, the district court does not take into account Section 338C3 or the policy, the legislative policy of California that is expressed there. We've already discussed that. Next point. Third, while the court does note that TBC's position is inconsistent with treaties and declarations of Spain, the court does not take into account the fact that those declarations undercut the importance of applying this general law to situations of art theft. In other words, if Spain has a policy, as it says it does, of returning art to its rightful owners that's been looted in the Holocaust, then doing so is going to be less impairing than if it did not have that policy. He specifically found the treaties were not the law. Go to your next point. Fourth, the court, in doing its analysis, does not take into account the extent to which the Spanish law is consistent or inconsistent with historical and modern norms. One of the things the California Supreme Court has said is you look at whether the Spanish law isn't or whether the law that's being considered. Spain's law of prescriptive acquisition is similar to Switzerland's law of prescriptive acquisition. It didn't apply because the baron was found to be negligent. But there are many countries that have prescriptive acquisition. So I don't see that point. No, they don't have prescriptive acquisition the way Spain does. Spain's prescriptive acquisition requires actual knowledge in order to prevent the prescriptive acquisition from applying. That is something that is an outlier, Your Honor, with respect. That's inconsistent with European law generally. It's inconsistent with Swiss law. It's inconsistent, most importantly here, with California law and with the law in the United States. It's inconsistent with the HERE Act that is federal law in the United States and under the Supremacy Clause relevant to California as well. So I respectfully suggest that the nature of Spanish law that has this absolute prescriptive effect even if the museum acted irresponsibly, even if they ignored red flags, even if they acted in bad faith, that law is an outlier, I would suggest. If they acted in bad faith, they became an encubridor under 1956 and extended the statute of limitations, which we extended in this case, and allowed the action to take place. Yes, but once the court ruled that they had to have actual knowledge, in other words, the district court ruled that the Baron had bad faith because of all these red flags and the lack of due diligence. The museum had the same red flags and the same lack of due diligence. So what the district court ruled is that good faith or bad faith was not enough under the actual knowledge standard. That's right. And we accept that as a matter of Spanish law. But that is what makes Spanish law such an outlier. That is what makes Spanish law such an outlier. Is your question answered? Okay, we've gone way over. Your fifth one now? The fifth one is the old, new, updated point that I made already, Your Honor. Okay. Thank you. All right, well, we've taken you over, but I'm going to give you five minutes for rebuttal. And I'm usually not this generous, but I think in light of the long history, and I will be similarly generous with you, Mr. Stauber. Thank you. Yes, so I'll try to kind of do my equalization here on some level so that you have time to say what you want to say as well. So, good morning. Good morning, Your Honor. Thaddeus Stauber of Nixon Peabody on behalf of the Thyssen-Bornemisza Foundation. Keep your voice up. I will do my best, Your Honor. And timing is not an issue for us here. We've been invested in this case for 17 years, and we appreciate the diligence that this court has paid. And we really particularly respect Judge Walters, and as this court was noting, his diligent analysis. Many of the discussion points that were raised here have already been findings of fact, which are subject to clear air, have already been findings by this court with respect to the issues that I respect troubled this court and troubled Judge Walters as to the outcome. But what we're here for today is the dispositive questions and the factors that we're supposed to consider. Well, if we didn't certify here, let's say we don't. You said, I mean, we have been at this quite a long time, and certification will cause further delay. But if we didn't certify, do you see anything in Justice Kagan's opinion that we're giving it a hook for another reversal at the Supreme Court? Absolutely not, Your Honor. As Justice Sotomayor asked at the hearing, why are we here? Because don't we end up the same whether we use the federal common law approach or whether we use a state foreign law choice approach? And that's exactly what happens here in this particular case. Justice Kagan in the decision was very careful to keep it focused on the point of law as to what choice of law test is used in the context of the Foreign Sovereign Immunity Act. That was the sole finding of that case. Well, and we were bound by our precedent, which the Supreme Court said was wrong. So I guess one way we could look at it is we were wrong for following precedent, not necessarily entirely wrong. That's how we make ourselves feel better when we get unanimously reversed by the Supreme Court, that we followed our precedent. But we didn't address the governmental interest. While the district court had addressed it, we did not address it. So we have to. For that, I owe you an apology because it was my job to take your decision to the Supreme Court and defend the precedent. And I apologize for that. So just to focus on what factors we should look at, the opposing counsel would have us look primarily at whether Spain's law is outmoded, non-progressive, old, hasn't been renewed. And he says that's the most important factor that the California courts would look at in deciding whose interests would be most impaired. Can you respond to that? Yes, Your Honor. This court, as recently as in 2021 in Stromberg, citing McCann, citing Mazda, California State Supreme Court precedent, tells us with respect to regulation or affecting conduct within its borders, the place of the wrong has the predominant interest. Could you please address Mr. Boyd's point that under McCann, and I believe under offshore rental, the two cases where foreign law was considered, the plaintiff had voluntarily exposed himself to that foreign law, whereas Cassirer never exposed himself to Spanish law. In offshore rental and McCann, in both of those cases, yes, the individual plaintiff in that particular case traveled to that particular jurisdiction, that foreign law, which was ultimately applied by the California State Supreme Court. They did not say that was a predominant factor. It was certainly something that was in the mix of factors they would look at. But in McCann, citing offshore rental, the predominant interest of where the conduct occurs is the driving factor. And in this particular case, as this court has found, this court has found, because the same facts that are at play, the same factors that are at issue were addressed by Judge Walter in his dual decision where he carefully analyzed both choice of law approaches. And the facts don't change. And this court has already endorsed those facts and found that under the foreign law, under the federal approach, we apply Spanish law. The significant impact test is not substantially different from the governmental interest test in the impairment. There has been a lot of discussion here today regarding 338 and the statute of limitations and whether or not we should go for a certification to the California State Supreme Court. The California legislature has already spoken on this issue. The California legislature, fully aware of this particular case in 2010 when it amended the statute of limitations, as a result of this court's decision in Fonsar, which found a predecessor statute of limitations unconstitutional because it was focused on Holocaust-era art cases, which is an area subject to federal preemption, which Garamendi also tells us, the Supreme Court tells us, that the California courts and the California legislature may not weigh into this area and put extra pressure or change the substantive property laws to make them Holocaust-era focused. So when the California state legislature had the opportunity in 2010, it had to run a very thin line. And it did that. And it said, we're going to afford claimants who are California residents an additional period of time to address concerns about not being able to travel to Europe, to address concerns about not being able to find what might be their property or had been their property at some point in time. But what the California legislature did not do, what the United States Congress did not do, what the United States, Spain, Switzerland, and every other country that signed on to the Terrorism Declaration of the Washington Principles did not do, they did not pass substantive property laws to say, if property is stolen in the Holocaust and later found, there is a universal law that is a standard that we are going to apply regardless of your particular jurisdiction laws. Here in the United States, Louisiana has acquisitive prescription. It's not an outlier law. As this court itself addressed when looking at the last decision regarding whether or not the foundation had actual knowledge, we analyzed, and this court carefully asked questions about, and in its own decision cited numerous Spanish court cases which have applied 1955 and have applied the question of what is required if there is stolen property and how we extend. So to say that this is an archaic law simply flies in the face of this own court's findings. It's not in any way archaic. Let me ask you this. What would happen if we or the district court applied California law and ordered the painting returned to this year and TBC refused to give it back? What would happen then? If there was a decision by this court that California law applied, California substantive property laws applied, and as a result thereof, that Mr. Casier's family, the rightful owners of it, they would take that judgment pursuant to the Foreign Assignment Immunity Act and follow the policies and procedures there to try to enforce their judgments. What a Spanish court would do with that decision is another question, but not before this court, because when doing the governmental interest test, when trying to determine impairment, as frustrating as I appreciate it may be, and as honest as this court and Judge Walter have been with us about the fact that he and this court might like to see a different outcome, California choice of law authority is clear and unequivocal. It's not a moral test. It's not a balancing test of what you'd like to see the outcome be. It's not a question into the social norms of respect. It's a question of whose law would be more impaired. Well, would you give any weight though to it appears that Spain has signed certain international accords that favor returning stolen artwork to their rightful owners. Why doesn't that weigh against Spain's interest in resisting the application of California law to this painting? Because those same guidelines, they're not treaties, they're not laws, they are guidelines. They also say you need to respect the laws of other countries. You need to respect the fact that there are different legal systems. You need to respect the fact that each country brings its own historical background to this difficult question that they are subject to confronting. The United States itself, as a result of signing on to the declaration, has not passed any substantive property laws to address Holocaust-era art claims. If the United States wanted to do so, it certainly could. In 2016, when it passed the HERE Act, it had a perfect opportunity to do so. And if you look at the legislative history, there was much advocacy for making not only a uniform statute of limitations, but a uniform property law, or in putting into it a thumb on the scale regarding the choice of law test. It did not do so. It left in place the substantive property laws of each state. And unlike other European countries, the United States has not taken the suggestion of many advocates to create an advisory panel where these claims could be submitted to. Can I ask a question? As we get this case back from the Supreme Court, this issue of choice of laws is entirely one of state law, California law. Do you oppose us certifying this question to the California Supreme Court? And if so, why? Yes, we do oppose that because we don't think it's necessary, because we think this panel is well-equipped, as it does every day. Supposedly, lawyers oppose it because they think they're going to lose. I don't think they're going to win in the California State Supreme Court either. And why is that, even if you go there? Number one, this is a Foreign Sovereign Immunity Act case, so the ultimate decision in this case lies with the federal court, not with the state court. At most, the California State Supreme Court could perhaps, if asked, tell us what factors, as you present the question, are supposed to be strongly considered in making the determination of the choice of laws clause. The other question was, whose interests are more impaired, California's or Spain's? And it could answer that question as well, I assume. Then they would be doing the actual analysis for you. And I would submit you don't need them to do that analysis for you. That's a question of state laws. I mean, the governmental interest test asks whose interests are more impaired and then lists a range of factors that will help the court decide that. But that certainly is a question of state law, that the California Supreme Court is, to the extent it's a question of state law, the California Supreme Court is in a good position to answer that question as to whether California's interests or Spain's interests are more impaired. So if we certify that question, that would tell us then whether the acquisitive prescription or thief can't pass a title rule applies. Isn't that correct? Yes, that is correct, Your Honor. But that is not a process that is necessary here because what we know from California State Supreme Court precedent is that in a tort case, which this is, a conversion case, if you look at the original complaint, it's a complaint for conversion. And the California Supreme Court has been clear throughout its precedent in that particular case, the predominant interest is where the conduct occurred. And the tort occurs where the last act occurred. In this particular case, it is the rejection of Mr. Casere's claim, which happened in 2001. That happened where the property is in Spain. There is no connection to California but for the fortuitous act of Mr. Casere moving here. And if the California Supreme Court were to tell us that, well, one of the factors that you're supposed to consider is the fact that this is Nazi-era looted art, what would the California Supreme Court be doing? It would be stepping right into Garamendi. It would be doing what the California legislature chose not to do when it had passed the procedural act. Let's not assume what the California Supreme Court may say because they're very clever and they would know not to say something like that, presumably. But other than necessary versus non-necessary, and of course the issue of delay, are there other concerns regarding certifying the question to California Supreme Court? It is a remedy that is supposed to be rarely used if there is no controlling precedent and it could have an outcome on the decision.  Judge Walter's analysis, as this court has noted, is thorough and its factual findings are subject to clear air. He follows California State Supreme Court precedent to the T. He sets forth his reasoning and at the end of the day, the only reason to send it to the California State Supreme Court is simply because the plaintiffs would like a different outcome and with all due respect, I understand this court may be concerned with the ultimate finding that it has to make, but this court is more than capable of doing so as it did in its last decision. And this court can send a message if it likes to the Spanish government and to the T.C. Bornemisa that it's frustrated with the outcome. And that's exactly what the California legislation is for. That's what our federal government is for. That's what treaties and other binding international principles are for. That is not the role of the court to make law. Well, let me ask you this. So just playing the devil's advocate here that how can it not be clear air when it's undisputed that that painting belongs to the casseers, that was originally belonged to the casseers. It's undisputed that she was told that it was missing and then she settled and all of that. But it's also undisputed that on the back of the painting it says Berlin. So we know that painting was in Berlin during a time with and it is in fact a Nazi looted painting. Why when you have TBC and you have the Baron who are the art experts as it were, why is it not clear air that they either had a willful blind eye or that they knew or they had an actual knowledge? This court, this court, this very panel already told us it was not clear air. This panel already affirmed that is off the table. That is the law of the case. Even though we applied the wrong standard, we were wrong. You were not wrong, Your Honor. You might have been wrong in your emotional outcome. You might have been wrong in what you would like to see happen and that's exactly where our Congress, our diplomats, our state senators. So even with regrets we can't change our mind. No, even with regrets you cannot change your mind, Your Honor. The facts have not changed in this case. We had a complete and full trial on this case. With respect to the California State Supreme Court, one of the other issues to consider is what is the larger impact? How many, how will this decision impact other cases? Are there cases coming down the pike that we need some clarity on? In the 17 years that we have been involved in this case, there have been two Holocaust era art restitution cases in the state of California. Bonsar, which this court dismissed before a trial on the merits based on equitable defenses. And Casir, which went to trial and went to a trial on the merits. The purpose of 338 was served. Mr. Casir was given six years, which kept the door open for this claim and revived it. In the interim, the HERA Act stepped forward and further revived it. But I would submit to you, two cases in 17 years and to the best of my knowledge, no case pending does not warrant the California State Supreme Court's involvement. Now, if we were in New York. Well, I think the number of cases does matter, you know, in terms of if it's the parade of horribles that we need. California's got a big interest if it's going to be a whole lot of cases. That being said, it always takes me back to that old Visa commercial where they say this costs this, this costs this, this, you know, priceless. So, you know, there are – I'm not so sure that the California Supreme Court would think it doesn't have a huge effect just by virtue of the fact that it's not diluted and it's one of its citizens. And the question then is, which governmental interest would be more impedant? Right. Okay. And with respect to California, it would be one, one particular citizen, one particular case. And California's own State Supreme Court precedent tells us that when the conduct occurs in another jurisdiction and the issues arise from activities in the jurisdiction, then our state's interest is diminished and the interests of our state citizens need to be subordinate. It would be an extraordinary extraterritorial reach. Okay, so is there any case out there that says if there's only one or two cases that that – No, it's – no, no, Your Honor. No, it's not. It's not that – it's not the – it's not the ultimate single factor. But it is a factor in those cases that have been granted. And it is also important to not forget that there was a trial on the merits. It was a full and complete trial. This court gave us the direction as to what Spanish law would be. This court navigated very artfully what Spanish law was. In this particular case on the governmental interest, the Kingdom of Spain itself has submitted a statement of interest that its laws with respect to property within its jurisdiction imperative to securing the assurances of the individuals conducting business there know what the outcomes of their property claims are going to be. California, particularly in the area of Holocaust-era armed cases, as Jeremy tells us, cannot supercharge itself. If the California legislature wanted to pass a choice of law test that put an extra weight if it's a Holocaust-era claim, it would have done so. It did not do so. I would submit that at this point in time, if you proceeded to find that California law, substantive property law applied, you would be running afoul of the Commerce Clause and reaching out to regulate conduct outside of the state of California. You would be running afoul of due process because you would strip the vested property rights of the Kingdom of Spain to property that was acquired pursuant to a royal decree of its government, pursuant to the use of its public funds. As much as that may pain this court, this case has been put out into the open, exposed through the jury trial, through the court trial process, pursuant to the Forest Avenue Act. The Supreme Court did not send it back with any direction to do anything in particular except examine Judge Walter's decision thoroughly, carefully analyzed, and set forth based on findings of fact that this court has already adopted, which are not in clear. We submit this is a decision that, as reluctant as the court may be, it is time to make and apply Spanish law. Well, is it something that even though we decided we were reversed because we used the wrong test, the district court analyzed it for both tests, went through the whole thing. Was it possible that the Supreme Court could have ruled for you right there? Did you argue that? That is not something that would have been appropriate, Your Honor, although we said if it would like to, it could, but as the plaintiff themselves requested, it should come back to this panel because we had had the full proceedings at the trial district court level, and it was this court's job and role to then interpret and apply the law to Judge Walter's decision. Did the order on certiorari simply limit certiorari to what the appropriate choice of law rule was and rule out the possibility that on a finding such as Justice Sotomayor intimated that the result would be the same? Why didn't they say, yes, you used the wrong rule, but it was harmless error? It would have turned out the same way, and affirm instead of reverse to us? The Supreme Court utilizes its opportunities very carefully to apply and make determinations of the law and tries to stick closely to that. Importantly in this case, let us not forget that the United States itself, through the Solicitor General, appeared, submitted an amicus, took no position on what the ultimate outcome should be when applying which test, and in fact shared with us that there likely would be no difference between whichever choice of law test were to be used. Is that anywhere in the record, or is that just? It's in the amicus brief, and it is the argument that they made before the court. And in doing so, they also cautioned this court and any other court that there are territorial constitutional limitations to what a state court can do, what a federal court sitting in diversity can do when applying state choice of law tests, and that if it stretches too far, as would be the case here, it will be subjecting itself to constitutional violations. I took a note down that you say if we rule in favor of applying California law and the opinion is awarded to Cassara, we may be in danger of violating the Commerce Clause? Yes, Your Honor. Explain that to me for a second. If you look at this court's decision in Siena v. Kansas City Royals, this court in citing the United States Supreme Court Healy v. Deere Institute said, if you permit one state to project its regulatory regime into the jurisdiction of another state, you would be running afoul of the Commerce Clause. What we have here is an ARC transaction, property transaction, which occurred in another state, in this case, another country. In fact, a friendly foreign country of ours in Spain. That's commercial activity. That's commerce. The state of California has a different law, which says you can't give good title to stolen property, which we can see. But if you take that law and you apply it to commerce that's occurring in Nevada, much less Spain, to transactions that have no interaction, didn't occur here in California, you're going to run afoul of the Commerce Clause. So the Commerce Clause is understandably applied to the states. What case are you looking at for a foreign Commerce Clause that would apply to Spain? I'm confused by that. Don't say it's a dormant. In any event, the Supreme Court is currently looking at that issue, the National Court case. And it's also important to note that in our case, the United States Supreme Court, yes, they said that 1606 tells us you treat a foreign sovereign as if they were a private party. And that means, by definition, they have due process rights. That means we go right back to where we were before in this case where Judge Walter said, if you apply a statute of limitations that reaches back and strips the foundation of its ownership, which was vested under Spanish law, you've got a due process problem, which would be precisely the case here. Now, if we were in New York, if we were in the Second Circuit, and we were applying New York State property laws or New York Choice of Law test, as my colleague cites in Baclar v. Barbera, we might be having a different conversation. But why would we be having a different conversation? Because in Baclar v. Barbera, the plaintiff brought the painting into New York, placed the painting for auction in New York, and sought to have the transaction occur in New York. And the court rightfully said, if you are going to take advantage of the art market that is here in New York, then you're going to be subject to California Choice of Law test, and that Choice of Law test is going to result in New York State substantive property laws applying. That's not what happened here. California doesn't have the same interest that it needs to protect. As much as my friends and colleagues in the art world would like to believe, California is not the epicenter of the art market. The three major auction houses, Phillips, Christie's, and Sotheby's, conduct their auctions in New York, in Hong Kong, in London. There is no major fine art market here in the state of New York through those similar concerns that are voiced in New York. But most importantly, the facts in this particular case, which have been carefully analyzed by Judge Walter, tell us that everything that's at issue happened in Spain.  There is no interest for California Protect, except for the very high and important interest to have fair and just resolutions to Holocaust-era art claims. But in doing so, respect the laws of the signatories of those treaties. I'm sorry, not treaties, guidelines, of those guidelines. And that's precisely what needs to happen here. Let me find out, do my colleagues have any additional questions? All right, we're pretty close to even, so if you want to take a minute to wrap up. I think we've said enough at this point, other than to say that we do appreciate this court's careful attention and analysis to this case, because it is one of importance, whether it be one or it be many. But in this particular set of facts, which have been tried and found, Spanish substantive property laws need to apply. And California's interests will not be in any way impaired. The only way they could be impaired is if there was a special interest that they were applying to Holocaust-era art claims. And the United States Supreme Court in Garamendi has already told us it can't do that. And if the federal government wanted to do it, it could have done it in the HERA Act. And the California State Legislature could have tried to do it. As you say, they're crafty, they're smart, they could have figured a way to thread the needle and perhaps change the choice of law test, but they did not. Thank you for your argument. Thank you. All right, Mr. Boyce, you have five minutes. Thank you, Your Honor. First, I just want to clear something up. The Solicitor General's amicus brief did not say that there was no difference between California law and choice of law and the rule that the court was examining. I just respectfully disagree with my colleague. I didn't hear him to say that. Okay. I heard him to say that they didn't take a position. That's right. They did not take a position. Yes. I agree with that. Okay. I misheard. And Justice Sotomayor didn't say there was no difference either. She said usually there's no difference. And in any event, there's nothing in Justice Kagan's opinion that suggests that there's no difference. What is in the opinion is that decision that it is critical that California law, as California courts would interpret it, apply. It's not what this court or any other court thinks is the right impairment, whether there was an impairment or not an impairment, which law is better impaired. It is what the California courts would determine is the law that's going to apply. The opposing counsel says he doesn't think that this case meets the standards for certifying to the state Supreme Court. How do you respond to that? We think this is exactly the kind of case. And the United States Supreme Court has suggested that it's appropriate for courts of appeals to certify cases where there is a dispute as to what the law would be or where the state court, whether it's California or some other state, has a particular interest in applying its law. But a lot of the cases they take do affect a lot of California citizens. If you look at it, a lot of times like wage and hour, insurance cases, things like that, that really clearly what the federal court would decide would affect a lot of, even though when we decide what California law is, it has no effect on what California law is except for its law of the case or law of the circuit. But this is one case. So how do you supersize that? Well, if you look at, the state of California has submitted an amicus brief to this court in which the state of California says how important it is to the state of California, how important California's law is here to be applied. Remind me who was the author of that? That was the attorney general. The attorney general submitted on behalf of the state of California. Which attorney general was it? It was the one just before. So Sarah? Albanca is the current one. Rob Albanca is the current attorney general. Yeah. And one of the things that California says to this court is that in this particular context, California's law is something that would be impaired by the choice of law of accepting the prescriptive, the absolute prescriptive rule in Spain. And what the California attorney general says is that not only is it a question of owes new and outlier, it's a question of general and specific. What California says, in McCann, the court was quite clear that the predominant interest of a domain or jurisdiction was in regulating conduct, quote, that occurs within its borders. Here, the only conduct that occurred within California's borders before Mr. Cassara brought himself and his lawsuit was that in 1951, the painting was sold to a California collector. From 1951 until Mr. Cassara filed his claim, there was no conduct at all regarding this painting in California. Why isn't that McCann statement regarding what the predominant interest is, why doesn't that take precedence over your point that the plaintiff didn't subject himself to the jurisdiction? I don't think you can separate those two, Your Honor, because what McCann is talking about is conduct. McCann is talking about conduct. It's talking about conduct that takes place with respect to the plaintiff in a foreign jurisdiction. And what McCann is saying is that when the plaintiff is in that foreign jurisdiction, then that foreign jurisdiction has a predominant interest in what happens to that plaintiff in that foreign jurisdiction. Here, the casseers were never in Spain. The conduct involved here was never conduct that was taking place in Spain with respect to the casseers. And one of the things that we've pointed out to the court and I think is really important is that the California Supreme Court says that one of the key issues in the impairment analysis is can one of the states' parties protect themselves in some other way? And one of the things that California has said in its 338C3 legislative history is that museums and dealers can protect themselves by doing provenance research, by getting insurance. So there are other ways to protect themselves. And one of the things that the court said in both Kearney and in offshore rentals was where the party that seeks to be protected, in this case the Spanish Museum. Okay, we're over extra time that I already gave you, but I have one last question and if my colleagues have any more, I want to give them the opportunity. How do you respond to what Mr. Stauber said, even if I have buyer's remorse about what I previously decided on clear error issues, that it's law of the case? Your Honor, law of the case does not bind this court. That is, your own decision does not bind this court if you find the interest of justice or to the contrary. The law of the case may bind a lower court, but in terms of your own court, you are always able to reconsider those kind of decisions. Okay. Do my colleagues have any additional questions? No, thanks. Okay, it doesn't appear so. Thank you both for your helpful argument in this matter. We appreciate that and your preparedness in this case that has been certainly both of you have lived with longer than we have. So we, you know, it's always a pleasure to have excellent advocates before us. Thank you both. Thank you very much, Your Honor. All rise. This court for this session stands adjourned.
judges: CALLAHAN, BEA, IKUTA